## IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| CLASSIC MILLWORK DESIGNS, INC., | : |
| | : |
|     Plaintiff, | : |
| | : |
| vs. | :   CIVIL ACTION |
| | :   FILE NO.: 19A76333 |
| PENNSYLVANIA LUMBERMENS | :   _____ |
| MUTUAL INSURANCE COMPANY, | : |
| | : |
|     Defendant. | : |

## COMPLAINT AND DEMAND FOR JURY TRIAL

This is an action against an insurer that negligently or in bad faith failed to accept a reasonable opportunity to settle within policy limits.  *S. Gen. Ins. Co. v. Holt*, 262 Ga. 267 (1992).  Like most such cases, this one begins with a tragic accident.  The tragic accident took place on a construction site when a man fell from a window to his death.  The decedent's survivors brought claims against Classic Millwork Designs, Inc. ("CMD"), which installed the window.  CMD is insured by Pennsylvania Lumbermens Mutual Insurance Company ("Lumbermens").  The decedent's survivors offered to settle their claims against CMD for Lumbermens' policy limits of $1 million.  Lumbermens rejected the offer, gambling it could win at trial.  The trial resulted in a ruinous judgment against CMD of more than $24 million.  Thus, CMD brings this action against Lumbermens under *Holt*.

## PARTIES, JURISDICTION AND VENUE

1.

CMD is a Georgia corporation authorized to transact business in Georgia.

2.

Lumbermens is an insurance company issuing policies to Georgia residents and businesses, including CMD.

3.

Lumbermens has been served by service on its registered agent, Registered Agent Solutions, 900 Old Roswell Lakes Parkway, Suite 310, Roswell, Georgia 30076.

4.

Lumbermens has agents doing business in DeKalb County.

5.

Lumbermens is subject to the jurisdiction of this Court.

6.

Venue is proper in this Court.

## <u>THE ACCIDENT AND UNDERLYING LAWSUIT</u>

### 7.

CMD is a viable and successful business that for more than 30 years has manufactured high-quality doors, windows, and other millworks.

### 8.

In April 2015, CMD replaced dormer windows in an attic at a renovation project of a colonial-style office building in Norcross, Georgia.

### 9.

On May 1, 2015, Wade Blackwell, while in the attic at the renovation project, fell through a window to his death (the "Accident").

### 10.

Mr. Blackwell's widow and the executor of Mr. Blackwell's estate retained attorneys to recover for the loss of their loved one.

### 11.

On March 31, 2016, Ms. Blackwell and the estate filed a lawsuit against CMD styled *Patricia Blackwell, individually, and Ted Sexton as administrator of the estate of Wade F. Blackwell v. Classic Millwork Designs, Inc.*, Civ. Action No. 16-C-01755-S4, State Court, Gwinnett County, Ga. (together with any appeal, "Underlying Lawsuit").  (A true and correct copy of the complaint in the Underlying Lawsuit is attached as <u>Exhibit A</u>.)

## LUMBERMENS' ASSUMPTION OF THE DEFENSE

12.

Prior to the Accident, CMD had purchased commercial general liability insurance from Pennsylvania Lumbermens Mutual Insurance Company ("Lumbermens Insurance") with $1,000,000 per occurrence limits.  (A true and correct copy of the "Policy" is attached as Exhibit B.)

13.

CMD paid all insurance premiums due on the Policy.

14.

CMD performed all conditions precedent to be entitled to liability coverage under the Policy for the Accident.

15.

CMD has breached no conditions or other provisions of the Policy.

16.

The Policy provides liability coverage to CMD for the Accident.

17.

The Policy requires Lumbermens to provide a defense to CMD in the Underlying Lawsuit.

18.

Lumbermens hired attorneys of its choice to defend CMD in the Underlying Lawsuit ("Insurance Defense Counsel").

## LUMBERMENS REJECTS AN OPPORTUNITY TO SETTLE

19.

Early in the Underlying Lawsuit, CMD and its principal owner, Mr. Clint Sapp, expressed a desire that the Underlying Lawsuit be settled.

20.

Prior to February 27, 2017, Lumbermens knew CMD desired that the Underlying Lawsuit be settled.

21.

By February 27, 2017, significant discovery had taken place in the Underlying Lawsuit, providing Lumbermens adequate time to investigate and evaluate the claims against CMD.

22.

By February 27, 2017, Lumbermens knew or reasonably should have known through its own independent investigation and evaluation of the claims against its insured that CMD faced a substantial risk of legal liability in excess of $1 million in the Underlying Lawsuit.

23.

On February 27, 2017, plaintiffs in the Underlying Lawsuit sent to Insurance Defense Counsel an offer to settle the claims against CMD and resolve the Underlying Lawsuit for an amount within the Policy limits.  (A true and correct copy of the "Policy Limits Offer" is attached as Exhibit C).

24.

Insurance Defense Counsel promptly informed Lumbermens of the Policy Limits Offer.

25.

The Policy provides as follows:  "We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result."  (Exhibit B, CGL Form, § I, Coverage A, ¶1a.)

26.

Under the terms of the Policy, Lumbermens had authority, power and discretion to accept or reject the Policy Limits Offer.

27.

The duty to settle within policy limits is a nondelegable duty held by Lumbermens.

28.

Lumbermens in fact assumed the duty to use its discretion under the Policy to decide whether to accept or reject the Policy Limits Offer.

29.

The Policy Limits Offer was capable of acceptance by Lumbermens.

30.

The Policy Limits Offer was a valid offer to settle for the Policy limits.

31.

The Policy Limits Offer was a reasonable opportunity to settle the claims against CMD for an amount within the Policy limits.

32.

The Policy Limits Offer was sent pursuant to O.C.G.A. § 9-11-68, which provides that parties who reject such offers can be liable for the offeror's attorneys fees and litigation expenses, depending on the results at trial.

33.

The Policy Limits Offer was also an unliquidated damages demand sent pursuant to O.C.G.A. § 51-12-14, which provides that parties who reject such offers can be liable for pre-judgment interest on the ultimate award, depending on the results at trial.

34.

Lumbermens had a duty under the law and a contractual duty under the Policy to investigate and evaluate the claims against CMD and make an independent decision on whether to accept the Policy Limits Offer.

35.

Lumbermens had a duty under the law and a contractual duty under the Policy to independently inform and advise CMD of the risks posed by the Underlying Lawsuit and the risks posed by rejection of the Policy Limits Offer.

36.

Had Lumbermens accepted the Policy Limits Offer, CMD would have been released from further financial liability to the plaintiffs in the Underlying Lawsuit.

37.

Lumbermens decided to reject the Policy Limits Offer.

38.

Lumbermens did not authorize Insurance Defense Counsel to make a counteroffer to the Policy Limits Offer.

39.

On April 6, 2017, Insurance Defense Counsel sent a letter rejecting the Policy Limits Offer without making a counteroffer.  (A true and correct copy of the "Rejection" is attached as Exhibit D)

40.

The Rejection was made at Lumbermens' direction.

41.

By and through Insurance Defense Counsel, Lumbermens rejected the Policy Limits Offer.

42.

Lumbermens reacted unreasonably to the Policy Limits Offer.  By rejecting the Policy Limits Offer, Lumbermens created an unreasonable risk of a verdict in excess of the Policy Limits.

43.

In rejecting the Policy Limits Offer, Lumbermens failed to give CMD's interest in avoiding liability for a judgment in excess of the Policy Limits the same consideration that it gave its own interest in paying less than the policy limits.

**TRIAL AND JUDGMENT IN EXCESS OF POLICY LIMITS**

44.

The Underlying Lawsuit went to trial and, on November 30, 2018, resulted in a unanimous verdict by twelve jurors awarding $17,886,210.50 in favor of the plaintiffs and against CMD.

45.

The court in the Underlying Lawsuit determined that rejection of the Policy Limits Offer entitled plaintiffs in the Underlying Lawsuit to pre-judgment interest under O.C.G.A. § 51-12-14.

46.

The court in the Underlying Lawsuit awarded pre-judgment interest of $115,734.79 in favor of plaintiffs and against CMD.

47.

The court in the Underlying Lawsuit determined that rejection of the Policy Limits Offer entitled plaintiffs to portions of the attorneys' fees and litigation expenses incurred in prosecuting the Underlying Lawsuit.

48.

The court in the Underlying Lawsuit awarded attorneys' fees and expenses of litigation in the amount of $6,247,235.16 in favor of plaintiffs and against CMD.

49.

On April 10, 2019, the court in the Underlying Lawsuit entered an Amended Final Judgment in the total amount of $24,249,180.45 (A true and correct copy of the "Judgment" is attached at Exhibit E.)

50.

The Judgment states that Georgia statutory law subjects the Judgment to post-judgment interest of 8.25 percent annually.  The Judgment is in fact subject to post-judgment interest of 8.25 percent annually.

51.

CMD is personally responsible for the Judgment and all post-judgment interest.

## LUMBERMENS POST-VERDICT ACTIONS

52.

After the verdict, Lumbermens retained additional attorneys as additional Insurance Defense Counsel.

53.

During proceedings on the amount of attorneys' fees and expenses of litigation to be awarded against CMD, Insurance Defense Counsel retained an expert to opine on the Policy Limits Offer, the Rejection, and the amount of attorneys' fees and expenses of litigation.

54.

During such proceedings, the expert opined in open court that the rejection of the Policy Limits Offer was reasonable.

55.

The opinion is harmful to CMD with respect to this action.  At the time the opinion was expressed, Lumbermens knew about the opinion, knew it was harmful to CMD with respect its claims against Lumbermens and desired that the opinion be expressed so as to prejudice CMD with respect to its claims against Lumbermens.

56.

Lumbermens did not inform CMD of the opinion or advise of its potentially adverse impact on CMD's interests and potentially beneficial impact on Lumbermens' interests.

57.

Lumbermens decided to appeal the Judgment.

58.

By its actions, Lumbermens has exhibited a willingness to conduct the appeal in a manner that is prejudicial to CMD's interests in this action.

59.

If Lumbermens had posted an appellate bond in the amount of $25 million, CMD would have been protected from post-judgment collection efforts during the pendency of the appeal.

60.

CMD insisted that Lumbermens post a bond in the amount of $25 million to protect CMD from Lumbermens' actions, but Lumbermens refused to do so.

61.

Lumbermens decided to post an appellate bond of only $1 million.

62.

As a result, plaintiffs in the Underlying Lawsuit are entitled to and have initiated post-judgment collection efforts against CMD, causing damage to CMD.

63.

The Judgment and post-trial proceedings garnered significant news coverage, damaging CMD's reputation.

## COUNT 1
## FAILURE TO SETTLE UNDER THE COMMON LAW

64.

CMD incorporates and realleges paragraphs 1-63 of this Complaint as if fully set forth herein.

65.

Lumbermens had reasonable opportunities to settle the claims against CMD within policy limits.

66.

Lumbermens had a duty to CMD to investigate, evaluate, negotiate, settle, and defend the claims presented against its insured.

67.

The provision giving Lumbermens discretion to settle creates a nondelegable duty to make reasonable settlement decisions when presented with a valid offer to settle within the policy limits, including the Policy Limits Offer.

68.

Lumbermens breached its duties by failing to adequately investigate and evaluate the claims, which failure to investigate and evaluate contributed to Lumbermens' failure to accept reasonable opportunities to settle the claims within policy limits, including the Policy Limits Offer.

69.

Lumbermens failed to treat CMD's interests equal to its own interests by gambling that it could save some of its policy limits by taking the case to trial rather than accepting settlement under the terms available and by its handling of the Underlying Lawsuit.

70.

In deciding to try the case rather than settle it, Lumbermens gambled with CMD's financial interests at stake.

-14-

71.

Lumbermens breached duties owed to CMD in handling the subject claim, failed to act as a reasonably prudent liability insurer, and negligently, or fraudulently, or in bad faith and with a specific intent to injure failed to settle the claims, damaging CMD as described herein.

72.

In addition, or in the alternative, Lumbermens' negligent or bad faith failure to settle was caused by its failure to hire and retain competent claims professionals and by its failure to train, supervise, provide time and resources to, or otherwise manage its claims professionals as would a reasonably prudent insurer that was attempting to or desired to treat its insured's interests equal to its own interests.

73.

In addition, or in the alternative, Lumbermens' negligent or bad faith failure to settle was caused by its failure to properly hire, monitor and supervise defense counsel as would a reasonably prudent insurer that was attempting to or desired to treat its insured's interests equal to its own interests.

74.

Because Lumbermens' actions and omissions, CMD was forced to endure the expense and trouble of litigation and trial, post-trial collection efforts, and liability for the Judgment.

75.

As a result of the breaches of duties to its insured and its bad faith, Lumber-mens is liable to CMD for the full amount of the judgment, plus interest and other damages.

## COUNT 2
## ATTORNEYS' FEES UNDER O.C.G.A. § 13-6-11

76.

CMD incorporates and realleges paragraphs 1-75 of this Complaint as if fully set forth herein.

77.

Lumbermens' actions and omissions constitute bad faith, stubborn litigiousness, and have caused CMD unnecessary trouble and expense within the meaning of O.C.G.A. § 13-6-11, entitling CMD to attorneys' fees and other expenses of litigation in this lawsuit.

## COUNT 3
## PUNITIVE DAMAGES

78.

CMD incorporates and realleges paragraphs 1-77 of this Complaint as if fully set forth herein.

79.

The actions of Lumbermens show willful misconduct, wantonness, and that entire want of care which would raise the presumption of conscious indifference to the consequences to its insured.

80.

The conduct of Lumbermens was deliberate and intentional and was the conscious and calculated result of Lumbermens' decision to give greater importance to its own interests rather than to the interests of its insured.

81.

Lumbermens' willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences with the specific intent to cause harm entitles CMD to punitive damages within the meaning of O.C.G.A. § 51-12-5.1.

82.

By reason of the foregoing, CMD is entitled to an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1 against Lumbermens in such amount to be determined by the enlightened conscience of a fair and impartial jury so as to penalize, punish or deter Lumbermens from repeating such conduct.

## DEMAND FOR JURY TRIAL

**WHEREFORE**, CMD prays for judgment in its favor and against Lumber-

mens for the following:

A.    That it have a trial by jury;

B.    That it have and recover the following:

    1.    Special damages in the sum of $24,249,180.45, representing the

        principal amount of the Judgment;

    2.    All post-judgment interest accruing on the Judgment;

    3.    Further special damages;

    4.    General damages in an amount to be determined by the enlight-

        ened conscious of a fair and impartial jury;

    5.    Nominal damages for each and every count of this complaint;

    6.    Reasonable attorneys' fees and expenses in this litigation;

    7.    Punitive damages (pursuant to OCGA § 51-12-5.1 or otherwise)

        in such amount that the jury deems adequate to punish and deter

        Lumbermens in light of the aggravated nature of its conduct, its

        financial circumstances, and its intent to cause harm;

    8.    That all costs be taxed against Lumbermens;

    9.    Pre-judgment interest; and,

    10.   Other and further relief as the Court may deem just and proper.

Respectfully submitted on August 23, 2019.


/s/ Richard E. Dolder                           /s/ Shattuck (Tucker) Ely
James (Jay) Sadd                                Shattuck (Tucker) Ely
Georgia Bar No. 622010                          Georgia Bar No. 246944
Richard E. Dolder                               Michael C. Gretchen
Georgia Bar No. 220237                          Georgia Bar No. 522171
SLAPPEY & SADD, LLC                             FELLOWS LABRIOLA LLP
352 Sandy Springs Circle                        Peachtree Center South Tower
Atlanta, GA 30328                               225 Peachtree Street, Suite 2300
(404) 255-6677                                  Atlanta, GA 30303
rich@lawyersatlanta.com                         404-586-9200
jay@lawyersatlanta.com                          tely@fellab.com
Attorneys for CMD                               mgretchen@fellab.com
                                                Attorneys for CMD

STATE COURT OF
DEKALB COUNTY, GA.
8/23/2019 10:28 AM
E-FILED
BY: Siana Smith

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

2016 MAR 31  PM 4: 24

RICHARD ALEXANDER, CLERK

N THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

PATRICIA BLACKWELL, Individually     :
and TED C. SEXTON as Administrator of :
The Estate of Wade F. Blackwell,     :     CIVIL ACTION FILE
                                     :
        Plaintiff,                   :     NO.: _____
                                     :
vs.                                  :     **16 C 01755- 4**
                                     :     **JURY TRIAL DEMANDED**
FIZZ CITY PROPERTY, LLC,             :
TUCKER DOOR & TRIM, LLC,             :
GIBSON CONSTRUCTION COMPANY,         :
and CLASSIC MILLWORK DESIGNS, INC., :
                                     :
        Defendants.                  :

## COMPLAINT IN TORT FOR DAMAGES

COMES NOW, Plaintiff, Patricia Blackwell (hereinafter "Mrs. Blackwell") and Ted C.

Sexton, as the Administrator of The Estate of Wade F. Blackwell (hereinafter, "Mr. Sexton" or the

"Administrator") in the above-styled action, and file this their Complaint in Tort for Damages against

Defendants Fizz City Property, LLC, Tucker Door & Trim, LLC, Gibson Construction Company and

Classic Millwork Designs, Inc. (hereinafter collectively referred to as the "Defendants"), showing

this Honorable Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1.

Mrs. Blackwell is a resident of the State of Georgia and is authorized to bring this action in

her capacities as Surviving Spouse of Wade F. Blackwell.  Mr. Sexton is a resident of the State of

Georgia, is the duly appointed Administrator of the Estate of Wade F. Blackwell, and is authorized to

bring this action on behalf of the estate in such capacity.



**EXHIBIT**

**A**

-2-

Defendant Fizz City Property, LLC ("FC Property") is a Georgia limited liability company with its principal place of business in Fulton County, Georgia. It is licensed to conduct business in the State of Georgia, and may be served with process via Second Original through its registered agent, Sandee F. Simon, located at 3978 Spalding Glen Drive, Atlanta, Georgia 30360, unless service is otherwise acknowledged.

-3-

Defendant Tucker Door & Trim, LLC ("Tucker Door") is a Georgia limited liability company with its principal place of business in Walton County, Georgia. It is licensed to conduct business in the State of Georgia, and may be served with process via Second Original through its registered agent, Ryan J. Siler, located at 2500 Culpepper Trace, Bethlehem, Georgia 30620, unless service is otherwise acknowledged.

-4-

Defendant Gibson Construction Company ("Gibson") is a Georgia corporation with its principal place of business in Fulton County, Georgia. It is licensed to conduct business in the State of Georgia, and may be served with process via Second Original through its registered agent, Daniel P. Gibson, located at 3105 Salisbury Drive, Alpharetta, Georgia 30004, unless service is otherwise acknowledged.

-5-

Defendant Classic Millwork Designs, Inc. ("Classic Millwork") is a Georgia corporation with its principal place of business in Gwinnett County, Georgia. It is licensed to conduct business in the State of Georgia, and may be served with process through its registered agent, Clinton W. Sapp, located at 405 North Crosslane Road, Monroe, Georgia 30656, unless service is otherwise acknowledged.

-6-

Venue is proper in Gwinnett County pursuant to O.C.G.A § 14-2-510(b)(3) and O.C.G.A § 9-10-31(b).  This Court has subject matter jurisdiction over this action and venue is proper in this Court.

## BACKGROUND FACTS

-7-

Plaintiff realleges and reincorporates the allegations contained in Paragraphs 1 through 6 by reference as if fully set forth herein.

-8-

At all times relevant to this cause of action, Wade F. Blackwell (hereinafter, "Mr. Blackwell") was fifty-two (52) years old and the spouse of Plaintiff Patricia Blackwell.  Mr. Blackwell had worked in the construction industry his entire professional life and in May of 2015 was doing business as "Wade Blackwell Construction."

-9-

At all times relevant to this cause of action, Defendant FC Property owned a certain Williamsburg style office building located at 3201 Peachtree Corners Circle, Norcross, Georgia 30092.  This building will be hereafter referred to as "the Premises."

-10-

Sometime prior to May 1, 2015, Defendant FC Property hired Defendant Gibson as a general contractor to renovate the Premises.

-11-

As part of the renovation process, Defendant Gibson contacted Mr. Blackwell and asked him to provide it with a cost proposal for repairing the rotting wood trim around the dormer windows on the top of the Premises.

3

-12-

In order to prepare a proposal for performing the work requested by Defendant Gibson, Mr. Blackwell needed to first see the building and review the work he was being asked to perform. Defendant Gibson instructed Mr. Blackwell to work out the date and time of his visit to the Premises with job superintendent Thomas Deangelis, an employee of Defendant Gibson.

-13-

Mr. Blackwell and Mr. Deangelis made arrangements to meet at the property on the morning of May 1, 2015.

-14-

On May 1, 2015, Mr. Blackwell met Mr. Deangelis at the Premises. Mr. Deangelis led Mr. Blackwell to the second story, then pulled down the stairs to the attic and led Mr. Blackwell into the unfinished attic space.

-15-

Mr. Deangelis directed Mr. Blackwell to one of the newly installed dormer windows. These new windows had been manufactured by Defendant Tucker Door and installed in their current position by Defendant Classic Millwork.

-16-

The dormer window to which Mr. Deangelis directed Mr. Blackwell (the "Window") was in the attic which comprised the 3rd story of the Premises. The wood trim on the exterior of the dormer surrounding the new window was rotting and in need of repair. This is the repair for which Mr. Blackwell was asked to submit a proposal.

-17-

Mr. Blackwell inspected the rotting trim from inside the attic. Once he had completed his inspection of this window, Mr. Blackwell attempted to close the window. While in the process of closing the window, one of the window sashes suddenly and without warning separated from its

4

anchor points causing the sash Mr. Blackwell was attempting to close to break free from the window frame causing Mr. Blackwell to lose his balance and fall to the brick steps three stories below.

-18-

As a direct and proximate result of the acts and omissions of Defendants, Mr. Blackwell died on the front steps of an office building on a Friday morning.

-19-

Mr. Blackwell's death was easily avoidable and was the direct and proximate result of one or more of Defendants' negligence.

## COUNT I - NEGLIGENCE
### (Defendant FC Property)

-20-

Plaintiff realleges and reincorporates the allegations contained in Paragraphs 1 through 19 by reference as if fully set forth herein.

-21-

At all times relevant, Mr. Blackwell was a business invitee on the Premises.

-22-

Defendant FC Property owed a duty to Mr. Blackwell to exercise reasonable care in maintaining the Premises in a reasonably safe condition, to reasonably inspect the Premises to ensure there were no latent dangers, and to warn of latent dangers.

-23-

Defendant FC Property was negligent and breached its duty to Mr. Blackwell by failing to exercise reasonable care in maintaining the Premises in a reasonably safe condition, by failing to reasonably inspect the Premises for latent dangers, and by failing to warn of latent dangers.

-24-

It was foreseeable that Mr. Blackwell or others could be injured or killed as a result of Defendant FC Property's breach of its duty.

-25-

As a direct and proximate result of Defendant FC Property's negligence and breach of its duty, Wade Blackwell lost his life.  Therefore, Georgia law provides that Plaintiff Patricia Blackwell should recover the full value of the life of her husband pursuant to O.C.G.A. § 51-4-1, *et seq*, and Plaintiff Sexton should recover compensatory damages on behalf of Mr. Blackwell's estate.

### COUNT II - NEGLIGENCE
### (Defendant Gibson)

-26-

Plaintiff realleges and reincorporates the allegations contained in Paragraphs 1 through 25 by reference as if fully set forth herein.

-27-

As the general contractor for construction and repairs being performed on the Premises, Defendant Gibson owed a duty to Mr. Blackwell to exercise reasonable care in maintaining the Premises in a reasonably safe condition, to reasonably inspect the Premises to ensure there were no latent dangers, and to warn of latent dangers.

-28-

Defendant Gibson breached its duty to Mr. Blackwell.

-29-

It was foreseeable that Mr. Blackwell or others could be injured or killed as a result of Defendant Gibson's breach of its duty.

-30-

As a direct and proximate result of Defendant Gibson's negligence and breach of duty, Wade Blackwell lost his life.  Therefore, Georgia law provides that Plaintiff Patricia Blackwell should recover the full value of the life of her husband pursuant to O.C.G.A. § 51-4-1, *et seq*, and Plaintiff Sexton should recover compensatory damages on behalf of Mr. Blackwell's estate.

### COUNT III - NEGLIGENCE
**(Defendant Classic Millwork)**

-31-

Plaintiff realleges and reincorporates the allegations contained in Paragraphs 1 through 30 by reference as if fully set forth herein.

-32-

At all relevant times Defendant Classic Millwork owed a duty to Mr. Blackwell and others to exercise reasonable care in properly installing the Window in a reasonably safe and workmanlike condition.

-33-

Defendant Classic Millwork breached its duty to Mr. Blackwell by failing to exercise reasonable care in installing the Window in a reasonably safe and workmanlike manner.

-34-

It was foreseeable that Mr. Blackwell or others could be injured or killed as a result of Defendant Classic Millwork's breach of its duty.

-35-

As a direct and proximate result of Defendant Classic Millwork's negligence and breach of duty, Wade Blackwell lost his life.  Therefore, Georgia law provides that Plaintiff Patricia Blackwell

7

should recover the full value of the life of her husband pursuant to O.C.G.A. § 51-4-1, *et seq*, and Plaintiff Sexton should recover compensatory damages on behalf of Mr. Blackwell's estate.

## COUNT IV - NEGLIGENCE
### (Defendant Tucker Door)

-36-

Plaintiff realleges and reincorporates the allegations contained in Paragraphs 1 through 35 by reference as if fully set forth herein.

-37-

Defendant Tucker Door had a duty to exercise reasonable care in its manufacturing, packaging, distribution, and sale of its products, including the Window.

-38-

It was foreseeable that the Window would be installed on a second or third story, and Mr. Blackwell was a foreseeable user of Tucker Door's products.

-39-

It was foreseeable by Tucker Door that its Window would be sold without adequate warnings or adequately communicated warnings or without adequate installation instructions.

-40-

Tucker Door knew or in the exercise of reasonable care should have known of the inherent danger of not placing adequate warning labels on the Window, of not permanently affixing assembly and mounting instructions on the Window, and of not adequately communicating warnings by labels attached to the Window itself.

-41-

Tucker Door breached its duty to Mr. Blackwell by failing to exercise reasonable care by manufacturing the Window in such a way that the upper sash would fall from the Window when not intended.

-42-

Tucker Door breached its duty to Mr. Blackwell by failing to exercise reasonable care in the manufacture, packaging, distribution and sale of the Window by failing to permanently affix adequate warnings and instructions on the structure of the Window itself.

-43-

Tucker Door breached its duty to Mr. Blackwell by failing to exercise reasonable care in the manufacture, packaging, distribution, and sale of the Window by failing to adequately communicate warnings and instructions by placing labels on the structure of the Window itself.

-44-

As a direct and proximate result of these failures by Tucker Door, Plaintiff is entitled to recover the full value of the life of her husband pursuant to O.C.G.A. § 51-4-1, *et seq.*, and Plaintiff Sexton should recover compensatory damages on behalf of Mr. Blackwell's estate.

### COUNT V - STRICT LIABILITY FOR DESIGN DEFECT
**(Defendant Tucker Door)**

-45-

Plaintiff realleges and reincorporates the allegations contained in Paragraphs 1 through 44 by reference as if fully set forth herein.

-46-

Pursuant to O.C.G.A. § 51-1-11, a manufacturer of a product is strictly liable for damages caused by such product if sold in a defective condition and such defect existed when it left the manufacturer.

-47-

The Window was either defectively designed or defectively manufactured by Tucker Door because the Window was new and the upper sash failed to remain in place and fell from the Window when Mr. Blackwell was trying to close the Window causing his death.

-48-

The Window was also designed defectively by Tucker Door because there were no instructions for proper assembly and mounting permanently affixed to the Window itself.

-49-

These defects were present in the product at the time it left the hands of Tucker Door.

-50-

As a direct and proximate result of these failures by Tucker Door, Plaintiff is entitled to recover the full value of the life of her husband pursuant to O.C.G.A. § 51-4-1, *et seq.*, and Plaintiff Sexton should recover compensatory damages on behalf of Mr. Blackwell's estate.

## COUNT VI - STRICT LIABILITY FOR WARNING DEFECT
**(Defendant Tucker Door)**

-51-

Plaintiff realleges and reincorporates the allegations contained in Paragraphs 1 through 50 by reference as if fully set forth herein.

-52-

Tucker Door failed to cause adequate warning labels to be affixed to the structure of the Window itself.

10

-53-

Tucker Door failed to adequately communicate warnings regarding the use of the Window by failing to place warning labels on the Window itself.

-54-

As a result of the failures by Tucker Door to adequately warn consumers and to adequately communicate warnings to consumers, the Window, when sold by the manufacturer, was not merchantable and reasonably suited to the use intended.

-55-

As a direct and proximate result of these failures by Tucker Door, Plaintiff is entitled to recover the full value of the life of her husband pursuant to O.C.G.A. § 51-4-1, *et seq.*, and Plaintiff Sexton should recover compensatory damages on behalf of Mr. Blackwell's estate.

## COUNT VII - PUNITIVE DAMAGES
### (as to all Defendants)

-56-

Plaintiff realleges and reincorporates the allegations contained in Paragraphs 1 through 55 by reference as if fully set forth herein.

-57-

Defendants' conduct was reckless, showed willful misconduct, malice, wantonness, conscious indifference and want of care for the consequences of Defendants' actions.

-58-

Defendants' reckless, willful misconduct, malice, wantonness and want of care raises the presumption of conscious indifference to the consequences of Defendants' actions which entitles Plaintiff to an award of punitive damages in an amount to be determined by the enlightened conscious of a fair and impartial jury.

11

**COUNT VIII**
**ACTION OF THE ESTATE FOR PAIN AND SUFFERING AND**
**BURIAL EXPENSES DUE TO NEGLIGENCE**
**(as to all Defendants)**

-59-

Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 58 by reference as if fully set forth herein.

-60-

As a result of Defendants' negligence, Mr. Blackwell experienced pain and extreme shock, fright and terror as he fell from the Window some thirty plus feet to his death.

-61-

As a result of Defendants' negligence, Mr. Blackwell's estate incurred funeral and other expenses.

-62-

Plaintiff Sexton is the Administrator of the Estate of Wade F. Blackwell and is the proper party to assert a claim for the pain and suffering and burial and other expenses of Mr. Blackwell pursuant to O.C.G.A. § 51-4-5(b).

**COUNT IX - ATTORNEY'S FEES**
**(as to all Defendants)**

-63-

Plaintiff realleges and reincorporates the allegations contained in Paragraphs 1 through 62 by reference as if fully set forth herein.

-64-

Defendants have acted in bad faith, been stubbornly litigious and caused Plaintiff unnecessary trouble and expense.  As a result of Defendants' conduct, Plaintiff is entitled to recover,

pursuant to O.C.G.A. § 13-6-11, all reasonable attorney's fees and expenses incurred in pursuing this action.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

(a)     Enter a judgment against all Defendants in favor of Mrs. Blackwell as Surviving Spouse of Wade F. Blackwell for the full value of the life of Mr.  Blackwell pursuant to O.C.G.A. § 51-4-1, *et. seq.*;

(b)     Enter a judgment against all Defendants in favor of Mr. Sexton, as Administrator of the Estate of Wade F. Blackwell, for the pain and suffering and burial expenses of Mr. Blackwell pursuant to O.C.G.A. § 51-4-5(b);

(c)     That Plaintiffs recover general and special damages from Defendants in an amount to be determined by a fair and impartial jury;

(d)     That Plaintiffs recover punitive damages in an amount to be determined by the enlightened conscience of a fair and impartial jury;

(e)     Enter a judgment in favor of Plaintiffs for all reasonable attorney's fees and expenses of litigation incurred in bringing this action; and

(f)     For such other and further relief as this Court deems just and proper.

[DATE AND SIGNATURE ON NEXT PAGE]

Respectfully submitted, this 31st day of March, 2016.

MAHAFFEY PICKENS TUCKER, LLP

Gerald Davidson, Jr.
Georgia Bar No. 206600
Steven A. Pickens
Georgia Bar No. 577850
Joshua P. Johnson
Georgia Bar No. 539957
Attorneys for Plaintiff

1550 North Brown Road
Suite 125
Lawrenceville, Georgia 30043
(770) 232-0000

POLICY NUMBER: 10-C109-03-15

**COMMERCIAL GENERAL LIABILITY**
**CG DS 01 10 01**

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

| COMPANY NAME | PRODUCER NAME |
|---|---|
| Pennsylvania Lumbermens Mutual Insurance Company | PointeNorth Insurance Group<br>P.O. Box 724728<br>Atlanta, GA 31139 |

NAMED INSURED Classic Millwork Design

MAILING ADDRESS 189 Gloster Road
Lawrenceville, GA 30042

POLICY PERIOD: FROM 07/01/2014 TO 07/01/2016 AT 12:01 A.M. TIME AT
YOUR MAILING ADDRESS SHOWN ABOVE

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| LIMITS OF INSURANCE | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $100,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $5,000 | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 | Any one person or organization |
| GENERAL AGGREGATE LIMIT | | $2,000,000 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | | $2,000,000 |

### RETROACTIVE DATE (CG 00 02 ONLY)

THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.
RETROACTIVE DATE: _____
(ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES)

### DESCRIPTION OF BUSINESS

FORM OF BUSINESS:

☐ INDIVIDUAL  ☐ PARTNERSHIP  ☐ JOINT VENTURE  ☐ TRUST

☐ LIMITED LIABILITY COMPANY  ☒ ORGANIZATION, INCLUDING A CORPORATION (BUT NOT IN-CLUDING A PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY COMPANY)

BUSINESS DESCRIPTION: MILLWORK SHOP

© ISO Properties, Inc., 2000
Original

**EXHIBIT**
**B**

| ALL PREMISES YOU OWN, RENT OR OCCUPY | |
|---|---|
| LOC NO. | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| 001-001 | CABINET MILLWORK<br>189 CLOSTER RD<br>Gwinnett<br>SNELLVILLE, GA 30078 |

© ISO Properties, Inc., 2000
Original

CG DS 01 10 01

| | | | | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|---|
| **LOC NO.** | **CLASSIFICATION** | **CODE NO.** | **PREMIUM BASE** | Prem/ Ops | Prod/Comp Ops | Prem/ Ops | Prod/Comp Ops |
| 001-001 | Wood Products Mfg. TERRITORY: 503 | 59985 | 1,000,000 Gross Sales | Included | Included | Included | Included |
| | Buildings or Premises-Bank or Office -Mercantile or Manufacturing (Lessor's Risk Only) – Not-For-Profit Only Products-completed operations are subject to the General Aggregate Limit TERRITORY: 503 | 61216 | 4,000 Area | Included | Included | Included | Included |

The table title "CLASSIFICATION AND PREMIUM" spans the top of the above table.

| CLASSIFICATION AND PREMIUM | | | | | | | |
|---|---|---|---|---|---|---|---|
| LOC NO. | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
| | | | | Prem/ Ops | Prod/Comp Ops | Prem/ Ops | Prod/Comp Ops |
| | Terrorism – Certified Acts | | | | | Included | |
| | Broad Form Additional Insured Endorsement | | | | | Included | |

© ISO Properties, Inc., 2000
Original

| | STATE TAX OR OTHER (if applicable) _____ |
|---|---|
| | TOTAL PREMIUM (SUBJECT TO AUDIT) Included |
| PREMIUM SHOWN IS PAYABLE: | AT INCEPTION _____ |
| | AT EACH ANNIVERSARY _____ |
| | (IF POLICY PERIOD IS MORE THAN ONE YEAR AND PRE-MIUM IS PAID IN ANNUAL INSTALLMENTS) |
| AUDIT PERIOD (IF APPLICABLE) | ☒ANNUALLY  ☐SEMI-ANNUALLY  ☐QUARTERLY  ☐MONTHLY |

| ENDORSEMENTS |
|---|
| ENDORSEMENTS ATTACHED TO THIS POLICY: |
| See Schedule of Forms and Endorsements _____ |
| _____ |
| _____ _____ |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

| Countersigned: | By: |
|---|---|
| (Date) | (Authorized Representative) |

© ISO Properties, Inc.,  2000
Original

CG DS 01 10 01

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER:<br>10-C109-03-15 | EFFECTIVE DATE:<br>07/01/2014 |
|---|---|

**NUMBER**              **TITLE**

### COMMON

| | |
|---|---|
| IL DS 00 (09-08) | Common Policy Declarations |
| PN-1 (01-12) | Privacy Notice |
| IL 00 17 (11-98) | Common Policy Conditions |
| CM 00 66 (03-10) | Accounts Receivable Coverage Form |
| IL 00 21 (09-08) | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| IL 02 62 (09-08) | Georgia Changes - Cancellation And Nonrenewal |
| IL 09 35 (07-02) | Exclusion Of Certain Computer-Related Losses |
| IL 09 52 (03-08) | Cap on Losses from Certified Acts of Terrorism |
| IL 09 95 (01-07) | Conditional Exclusion Of Terrorism (Relating To Disposition Of Federal Terrorism Risk Insurance Act) |
| IL 09 99 (01-07) | Disclosure Of Premium And Estimated Premium For Certified Acts Of Terrorism Coverage (Pursuant To Terrorism Risk Insurance Act) |

### PROPERTY

| | |
|---|---|
| CP DS 00 (10-00) | Commercial Property Coverage Part Declarations |
| BM 1-Z (11-04) | Equipment Breakdown Endorsement Schedule |
| LUM-152 (01-08) | Notice to Policyholders |
| CP 00 10 (10-12) | Building And Personal Property Coverage Form |
| CP 00 90 (07-88) | Commercial Property Conditions |
| SLP-2 (01-97) | Special Lumber Pak Extension of Coverage Endorsement |
| SLP-4 (07-02) | Enhance Coverage Endorsement |
| LUM-130 (06-04) | Special Lumber Pak Clarifying Endorsement |
| CP 01 31 (03-13) | Georgia Changes |
| CP 01 40 (07-06) | Exclusion Of Loss Due To Virus Or Bacteria |
| CP 10 30 (10-12) | Causes of Loss - Special Form |
| GU 207 A (11-12) | Limitations On Coverage For Roof Surfacing |
| CP 14 20 (07-88) | Additional Property Not Covered |
| EB 00 20 (01-13) | Equipment Breakdown Protection Coverage Form |
| EB 01 41 (09-07) | Limited Coverage For Fungus, Wet Rot And Dry Rot - Georgia |
| EB 99 63 (09-10) | Off-Premises Equipment Coverage |
| EB 99 62 (09-10) | Covered Equipment Deductible Waiver |
| GU 207 ME (08-11) | "Covered Equipment" and Definitions Endorsement |

### GENERAL LIABILITY

| | |
|---|---|
| CG DS 01 (10-01) | Commercial General Liability Declarations |
| LUM-150 (01-08) | Notice to Policyholders |
| CG 00 01 (04-13) | Commercial General Liability Coverage Form |
| CG 21 06 (05-14) | Exclusion - Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability - With Limited Bodily Injury Exception |
| CG 21 32 (05-09) | Communicable Disease Exclusion |
| CG 21 47 (12-07) | Employment-Related Practices Exclusion |
| CG 21 55 (09-99) | Total Pollution Exclusion With A Hostile Fire Exception |
| CG 21 67 (12-04) | Fungi or Bacteria Exclusion |
| CG 21 70 (01-08) | Cap on Losses From Certified Acts of Terrorism |
| CG 21 86 (12-04) | Exclusion - Exterior Insulation and Finish Systems |

Original                                                    **Page 1 of 2**

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER:<br>10-C109-03-15 | EFFECTIVE DATE:<br>07/01/2014 |
|---|---|

**NUMBER**                    **TITLE**

**GENERAL LIABILITY**

CG 21 87 (01-07)   Conditional Exclusion of Terrorism (Relating to Disposition of
                   Federal Terrorism Risk Insurance Act)
CG 21 96 (03-05)   Silica Or Silica-Related Dust Exclusion
LUM-123 (02-01)    Asbestos Exclusion
LUM-145 (02-06)    Broad Form Additional Insured

# PENNSYLVANIA LUMBERMENS MUTUAL INSURANCE COMPANY

2005 Market Street
Suite 1200
Philadelphia, PA 19103-7008

# COMMON POLICY DECLARATIONS

**POLICY NUMBER:** 10-C109-03-15     **PREVIOUS POLICY NUMBER:** 10-C109-03-13

| **COMPANY NAME** | **PRODUCER NAME** 8075 |
|---|---|
| Pennsylvania Lumbermens Mutual Insurance Company<br>2005 Market Street<br>Suite 1200<br>Philadelphia, PA 19103-7008 | PointeNorth Insurance Group<br>P.O. Box 724728<br>Atlanta, GA 31139 |

**NAMED INSURED:** Classic Millwork Design

**MAILING ADDRESS:** 189 Gloster Road
Lawrenceville, GA 30042

**POLICY PERIOD: FROM** 07/01/2014 **TO** 07/01/2016
**AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.**

**BUSINESS DESCRIPTION** MILLWORK SHOP

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

|  | **PREMIUM** |
|---|---|
| COMMERCIAL PROPERTY COVERAGE PART | INCLUDED |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | INCLUDED |
| TERRORISM - CERTIFIED ACTS (GENERAL LIABILITY) | INCLUDED |
| TERRORISM - CERTIFIED ACTS (PROPERTY) | INCLUDED |
| **TOTAL:** | $14,782.00 |

IL DS 00 09 08                 ©ISO Properties, Inc., 2007                 **Page 1 of 2**     ☐
Original

**POLICY NUMBER:** 10-C109-03-15

| FORMS APPLICABLE TO ALL COVERAGE PARTS (SHOW NUMBERS): |
|---|
| See Schedule of Forms and Endorsements. |

| Countersigned | By: |
|---|---|
| **(Date)** | **(Authorized Representative)** |

COMMERCIAL PROPERTY
CP DS 00 10 00

# COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS PAGE

**POLICY NO.** 10-C109-03-15

**EFFECTIVE DATE** 07/01/2014

☐ **"X" If Supplemental Declarations Is Attached**

**NAMED INSURED**

Classic Millwork Design

**DESCRIPTION OF PREMISES**

| Prem. No. | Bldg. No. | Location, Construction And Occupancy |
|---|---|---|

See Description of Premises Schedule

**COVERAGES PROVIDED**    Insurance At The Described Premises Applies Only For Coverages For Which A Limit Of Insurance Is Shown

| Prem. No. | Bldg. No. | Coverage | Limit Of Insurance | Covered Causes Of Loss | Coinsurance* |
|---|---|---|---|---|---|

See Coverages Provided Schedule

*If Extra Expense Coverage, Limits On Loss Payment Applicable Only When Entries Are Made In The Schedule Below

**OPTIONAL COVERAGES**

| Prem. No. | Bldg. No. | Expiration Date | Agreed Value Cov. | Amount | Replacement Cost (X) Building | Pers. Prop. | Including Stock |
|---|---|---|---|---|---|---|---|

See Optional Coverages Schedule

| Inflation Guard (%) Bldg. | Pers. Prop. | *Monthly Limit Of Indemnity | Maximum Period Of Indemnity | *Extended Period Of Indemnity |
|---|---|---|---|---|

*Applies to Business Income Only

**MORTGAGEHOLDERS**

| Prem. No. | Bldg. No. | Mortgageholder Name And Mailing Address |
|---|---|---|

**DEDUCTIBLE**

$5,000

**Exceptions:** Earthquake:%

Copyright, Insurance Services Office, Inc., 1999
Original

## DESCRIPTION OF PREMISES

| Prem. No. | Bldg. No. | Location, Construction And Occupancy |
|-----------|-----------|-------------------------------------|
| 001 | 001 | CABINET MILLWORK<br>189 CLOSTER RD<br>Gwinnett<br>SNELLVILLE, GA 30078<br>Non-Combustible     CABINET MILLWORK |
| 001 | 002 | MILLWORK SHOP<br>189 CLOSTER RD<br>Gwinnett<br>SNELLVILLE, GA 30078<br>Non-Combustible     MILLWORK SHOP |

**COVERAGES PROVIDED**   **Insurance At The Described Premises Applies Only For Coverages For Which A Limit Of Insurance Is Shown**

| Prem. No. | Bldg. No. | Coverage | Limit Of Insurance | Covered Causes Of Loss | Coinsurance* |
|---|---|---|---|---|---|
| 001 | 001 | Building | $127,748 | Special Form Including Theft | 90% |
| | | Personal Property of Insured | $62,400 | Special Form Including Theft | 90% |
| 001 | 002 | Building | $200,748 | Special Form Including Theft | 90% |
| | | Personal Property of Insured | $11,648 | Special Form Including Theft | 90% |

**OPTIONAL COVERAGES     Applicable Only When Entries Are Made In The Schedule Below**

| Prem. | Bldg. | | |
|-------|-------|---|---|
| **No.** | **No.** | | |
| 001 | 001 | Building | |
| | | Replacement Cost | |
| | | | |
| | | Personal Property of Insured | |
| | | Replacement Cost | |
| | | | |
| 001 | 002 | Building | |
| | | Replacement Cost | |
| | | | |
| | | Personal Property of Insured | |
| | | Replacement Cost | |

## FORMS APPLICABLE

**To All Coverages:**

```
BM 1-Z (11-04)
CP 14 20 (07-88)
EB 00 20 (01-13)
EB 01 41 (09-07)
EB 99 62 (09-10)
EB 99 63 (09-10)
GU 207 A (11-12)
GU 207 ME (08-11)
LUM-152 (01-08)
```

**To Specific Premises/Coverages:**

| Prem. No. | Bldg. No. | Coverages | Form Number |
|---|---|---|---|
| 001 | 001 | Building | CP 00 10 (10-12) |
| | | | CP 10 30 (10-12) |
| | | Personal Property of Insured | CP 00 10 (10-12) |
| | | | CP 10 30 (10-12) |
| | | Enhance Coverage Endorsement | SLP-4 (07-02) |
| | | All Coverages | CP 00 90 (07-88) |
| | | | CP 01 31 (03-13) |
| | | | CP 01 40 (07-06) |
| | | | CP DS 00 (10-00) |
| | | | LUM-130 (06-04) |
| | | | SLP-2 (01-97) |
| 001 | 002 | Building | CP 00 10 (10-12) |
| | | | CP 10 30 (10-12) |
| | | Personal Property of Insured | CP 00 10 (10-12) |
| | | | CP 10 30 (10-12) |
| | | Enhance Coverage Endorsement | SLP-4 (07-02) |
| | | All Coverages | CP 00 90 (07-88) |
| | | | CP 01 31 (03-13) |
| | | | CP 01 40 (07-06) |
| | | | CP DS 00 (10-00) |
| | | | LUM-130 (06-04) |
| | | | SLP-2 (01-97) |

POLICY NUMBER: 10-C109-03-15

EQUIPMENT BREAKDOWN
BM 1-Z 11 04

# EQUIPMENT BREAKDOWN SCHEDULE
## COMMERCIAL PACKAGE POLICY

Subject to any applicable limits on the Declarations, the Equipment Breakdown Limit is the most we will pay for loss or damage arising from any one Accident.

These coverages apply to all locations covered on the policy, unless otherwise specified.

| Coverages | Limits |
|---|---|
| Equipment Breakdown Limit | $402,544 |
| Business Income | Excluded |
| Extra Expense | Excluded |
| Utility Interruption | $100,000 |
| Expediting Expense | $100,000 |
| Hazardous Substances | $100,000 |
| Water Damage | $100,000 |
| Ammonia Contamination | $100,000 |
| Data & Media | $100,000 |
| Spoilage | $100,000 |
| Ordinance or Law | $100,000 |
| Errors & Omissions | $100,000 |
| Brands & Labels | $100,000 |
| Consequential Loss | $100,000 |
| Newly Acquired Premises | $250,000 |
| Diagnostic Equipment | $100,000 |

### Deductibles

| | |
|---|---|
| Combined, All Coverages | N/A |
| Direct Coverages | $5,000 |
| Indirect Coverages | 72 hour |
| Spoilage | N/A |

### Other Conditions

POLICY NUMBER: 10-C109-03-15

**COMMERCIAL GENERAL LIABILITY**
CG DS 01 10 01

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

| COMPANY NAME | PRODUCER NAME |
|---|---|
| Pennsylvania Lumbermens Mutual Insurance Company | PointeNorth Insurance Group<br>P.O. Box 724728<br>Atlanta, GA 31139 |

NAMED INSURED Classic Millwork Design

MAILING ADDRESS 189 Gloster Road
Lawrenceville, GA 30042

POLICY PERIOD:  FROM  07/01/2014  TO  07/01/2016  AT 12:01 A.M. TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $100,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $5,000 | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 | Any one person or organization |
| GENERAL AGGREGATE LIMIT | $2,000,000 | |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 | |

## RETROACTIVE DATE (CG 00 02 ONLY)

THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.
RETROACTIVE DATE: _____
(ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES)

## DESCRIPTION OF BUSINESS

FORM OF BUSINESS:

☐ INDIVIDUAL    ☐ PARTNERSHIP    ☐ JOINT VENTURE    ☐ TRUST

☐ LIMITED LIABILITY COMPANY    ☒ ORGANIZATION, INCLUDING A CORPORATION (BUT NOT IN-CLUDING A PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY COMPANY)

BUSINESS DESCRIPTION: MILLWORK SHOP

| | | | | RATE | | ADVANCE PREMIUM | |
| LOC NO. | CLASSIFICATION | CODE NO. | PREMIUM BASE | Prem/ Ops | Prod/Comp Ops | Prem/ Ops | Prod/Comp Ops |
|---|---|---|---|---|---|---|---|
| | **CLASSIFICATION AND PREMIUM** | | | | | | |
| 001-001 | Wood Products Mfg. TERRITORY: 503 | 59985 | 1,000,000 Gross Sales | Included | Included | Included | Included |
| | Buildings or Premises-Bank or Office -Mercantile or Manufacturing (Lessor's Risk Only) - Not-For-Profit Only Products-completed operations are subject to the General Aggregate Limit TERRITORY: 503 | 61216 | 4,000 Area | Included | Included | Included | Included |

| | CLASSIFICATION AND PREMIUM | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| LOC NO. | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | | |
| | | | | Prem/ Ops | Prod/Comp Ops | Prem/ Ops | Prod/Comp Ops |
| | Terrorism – Certified Acts | | | | | Included | |
| | Broad Form Additional Insured Endorsement | | | | | Included | |

© ISO Properties, Inc., 2000
Original

| ALL PREMISES YOU OWN, RENT OR OCCUPY | |
|---|---|
| LOC NO. | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| 001-001 | CABINET MILLWORK<br>189 CLOSTER RD<br>Gwinnett<br>SNELLVILLE, GA 30078 |

© ISO Properties, Inc.,  2000
Original

CG DS 01 10 01

| | STATE TAX OR OTHER (if applicable) _____ | |
|---|---|---|
| | TOTAL PREMIUM (SUBJECT TO AUDIT) | Included |
| PREMIUM SHOWN IS PAYABLE: | AT INCEPTION _____ | |
| | AT EACH ANNIVERSARY _____ | |
| | (IF POLICY PERIOD IS MORE THAN ONE YEAR AND PRE-MIUM IS PAID IN ANNUAL INSTALLMENTS) | |
| AUDIT PERIOD (IF APPLICABLE) | ☒ANNUALLY  ☐SEMI-ANNUALLY  ☐QUARTERLY | ☐MONTHLY |

### ENDORSEMENTS

ENDORSEMENTS ATTACHED TO THIS POLICY:

See Schedule of Forms and Endorsements

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

| Countersigned: | By: |
|---|---|
| (Date) | (Authorized Representative) |

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER:<br>10-C109-03-15 | EFFECTIVE DATE:<br>07/01/2014 |
|---|---|

**NUMBER**          **TITLE**

### COMMON

| | |
|---|---|
| IL DS 00 (09-08) | Common Policy Declarations |
| PN-1 (01-12) | Privacy Notice |
| IL 00 17 (11-98) | Common Policy Conditions |
| CM 00 66 (03-10) | Accounts Receivable Coverage Form |
| IL 00 21 (09-08) | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| IL 02 62 (09-08) | Georgia Changes - Cancellation And Nonrenewal |
| IL 09 35 (07-02) | Exclusion Of Certain Computer-Related Losses |
| IL 09 52 (03-08) | Cap on Losses from Certified Acts of Terrorism |
| IL 09 95 (01-07) | Conditional Exclusion Of Terrorism (Relating To Disposition Of Federal Terrorism Risk Insurance Act) |
| IL 09 99 (01-07) | Disclosure Of Premium And Estimated Premium For Certified Acts Of Terrorism Coverage (Pursuant To Terrorism Risk Insurance Act) |

### PROPERTY

| | |
|---|---|
| CP DS 00 (10-00) | Commercial Property Coverage Part Declarations |
| BM 1-Z (11-04) | Equipment Breakdown Endorsement Schedule |
| LUM-152 (01-08) | Notice to Policyholders |
| CP 00 10 (10-12) | Building And Personal Property Coverage Form |
| CP 00 90 (07-88) | Commercial Property Conditions |
| SLP-2 (01-97) | Special Lumber Pak Extension of Coverage Endorsement |
| SLP-4 (07-02) | Enhance Coverage Endorsement |
| LUM-130 (06-04) | Special Lumber Pak Clarifying Endorsement |
| CP 01 31 (03-13) | Georgia Changes |
| CP 01 40 (07-06) | Exclusion Of Loss Due To Virus Or Bacteria |
| CP 10 30 (10-12) | Causes of Loss - Special Form |
| GU 207 A (11-12) | Limitations On Coverage For Roof Surfacing |
| CP 14 20 (07-88) | Additional Property Not Covered |
| EB 00 20 (01-13) | Equipment Breakdown Protection Coverage Form |
| EB 01 41 (09-07) | Limited Coverage For Fungus, Wet Rot And Dry Rot - Georgia |
| EB 99 63 (09-10) | Off-Premises Equipment Coverage |
| EB 99 62 (09-10) | Covered Equipment Deductible Waiver |
| GU 207 ME (08-11) | "Covered Equipment" and Definitions Endorsement |

### GENERAL LIABILITY

| | |
|---|---|
| CG DS 01 (10-01) | Commercial General Liability Declarations |
| LUM-150 (01-08) | Notice to Policyholders |
| CG 00 01 (04-13) | Commercial General Liability Coverage Form |
| CG 21 06 (05-14) | Exclusion - Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability - With Limited Bodily Injury Exception |
| CG 21 32 (05-09) | Communicable Disease Exclusion |
| CG 21 47 (12-07) | Employment-Related Practices Exclusion |
| CG 21 55 (09-99) | Total Pollution Exclusion With A Hostile Fire Exception |
| CG 21 67 (12-04) | Fungi or Bacteria Exclusion |
| CG 21 70 (01-08) | Cap on Losses From Certified Acts of Terrorism |
| CG 21 86 (12-04) | Exclusion - Exterior Insulation and Finish Systems |

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER:<br>10-C109-03-15 | EFFECTIVE DATE:<br>07/01/2014 |
|---|---|

**NUMBER**            **TITLE**

**GENERAL LIABILITY**

CG 21 87 (01-07)    Conditional Exclusion of Terrorism (Relating to Disposition of
                    Federal Terrorism Risk Insurance Act)
CG 21 96 (03-05)    Silica Or Silica-Related Dust Exclusion
LUM-123 (02-01)     Asbestos Exclusion
LUM-145 (02-06)     Broad Form Additional Insured

PN-1 01 12

# PRIVACY NOTICE

To Our Customers:

We collect non-public personal information about you from the following sources:

- Information we receive from you on applications or other forms.
- Information about your transactions with us, our affiliates or others.
- Information we receive from a consumer reporting agency.

We do not disclose any non-public information about our customers or former customers to anyone, except as permitted by law.

We restrict access to information about you to employees who need to know that information to provide you with products or to provide you benefits or services under them.  We maintain physical, electronic and procedural safeguards that comply with state and federal regulations to guard the information about you.

**Pennsylvania Lumbermens Mutual Insurance Company**
**One Commerce Square**
**2005 Market Street, Suite 1200**
**Philadelphia, PA  19103-7008**
**(800) 752-1895**

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012   CG 00 01 04 13

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © Insurance Services Office, Inc., 2012

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

   (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

   (b) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

© Insurance Services Office, Inc., 2012
CG 00 01 04 13

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

### k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

### l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

### n. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

### o. Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

### p. Electronic Data

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

### q. Recording And Distribution Of Material Or Information In Violation Of Law

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

### i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

### j. Insureds In Media And Internet Type Businesses

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

### k. Electronic Chatrooms Or Bulletin Boards

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

### l. Unauthorized Use Of Another's Name Or Product

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

### m. Pollution

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

### n. Pollution-related

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

### o. War

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### p. Recording And Distribution Of Material Or Information In Violation Of Law

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 © Insurance Services Office, Inc., 2012

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

© Insurance Services Office, Inc., 2012

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by;

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

© Insurance Services Office, Inc., 2012

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

### a. Primary Insurance

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

### b. Excess Insurance

(1) This insurance is excess over:

    (a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

        (i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

        (ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

        (iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

        (iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

    (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    (b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

 © Insurance Services Office, Inc., 2012

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

       (1) Power cranes, shovels, loaders, diggers or drills; or

       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

       (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

       (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

  © Insurance Services Office, Inc., 2012

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

 © Insurance Services Office, Inc., 2012

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      (2) The providing of or failure to provide warnings or instructions.

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

COMMERCIAL GENERAL LIABILITY
CG 21 32 05 09

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Communicable Disease**

   "Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

   **a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

   **b.** Testing for a communicable disease;

   **c.** Failure to prevent the spread of the disease; or

   **d.** Failure to report the disease to authorities.

B. The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Communicable Disease**

   "Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

   **a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

   **b.** Testing for a communicable disease;

   **c.** Failure to prevent the spread of the disease; or

   **d.** Failure to report the disease to authorities.

© Insurance Services Office, Inc., 2008

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2006

COMMERCIAL GENERAL LIABILITY
CG 21 55 09 99

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(a) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(b) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc.,  2003

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 08

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© ISO Properties, Inc., 2007

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3. A reinforced or unreinforced base coat;

4. A finish coat providing surface texture to which color may be added; and

5. Any flashing, caulking or sealant used with the system for any purpose.

CG 21 86 12 04                    © ISO Properties, Inc., 2003                    **Page 1 of 1**

COMMERCIAL GENERAL LIABILITY
CG 21 87 01 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. **Applicability Of The Provisions Of This Endorsement**

1. The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

   b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

      (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

2. If the provisions of this endorsement become applicable, such provisions:

   a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

© ISO Properties, Inc., 2005

3. **If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.**

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

© ISO Properties, Inc., 2005
CG 21 87 01 07   □

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **C.5.** or **C.6.** are exceeded.

With respect to this Exclusion, Paragraphs **C.5.** and **C.6.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2004

COMMERCIAL GENERAL LIABILITY
LUM-123 02 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. This Insurance does not apply to:
   1. "Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of, resulting from, caused or contributed to by asbestos or exposure to asbestos;
   2. The costs of abatement, mitigation, removal or disposal of asbestos.

B. This exclusion also includes:
   1. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and
   2. Any obligation to share damages with or repay someone else whom must pay damages because of such injury or damages.

COMMERCIAL GENERAL LIABILITY
LUM-145 02 06

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BROAD FORM ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. **Broad Form Additional Insured**

   Paragraph **2.** of **Section II – Who Is An Insured** of **Commercial General Liability Coverage Form CG 00 01** is amended to add the following:

   e.  Additional Insured by Written Contract or Written Agreement

   The following are insureds under the policy when you have agreed in a written contract or agreement to provide them coverage as additional insureds under your policy:

   **(1)**  Lessors of Leased Equipment:  person(s) or organization(s) who lease equipment to you, but only with respect to their liability for "bodily injury", "property damage" or "personal and advertising injury" arising out of or caused, in whole or in part, by the maintenance, operation or use of such equipment by you, your "employees", "temporary workers" or "volunteer  workers".

   With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

   **(2)**  Owners, Managers or Lessors of Premises or Land:  any owner, manager or lessor of premises or land, but only with respect to their liability arising out of or caused, in whole or in part, by ownership, maintenance or use of that part of such premises or land leased to you.

   This insurance does not apply to:

   **(a)**  Any "occurrence" which takes place after you cease to be a tenant or lessee of such premises or  land; or

   **(b)**  Structural alterations, new construction or demolition operations performed by or on behalf of the owner, manager or lessor of such premises or land.

   **(3)**  Mortgagees, Assignees or Receivers:  any person(s) or organization(s) with respect to their liability as your mortgagee, assignee or receiver and arising out of their ownership, maintenance or use of your premises.

   This insurance does not apply to:

   Any structural alterations, new construction or demolition operations performed by you or others for such person or organization.

   **(4)**  Any person or organization, other than a joint venture, for whom you have agreed by written contract to provide "bodily injury" or "property damage" liability insurance, but only for liability arising out of or caused, in whole or in part, by operation(s) performed by you or on your behalf, provided that:

   **(a)**  This Subparagraph **(4)** does not apply to any agreement to provide insurance to:

   **(i)**  Any "employee", association of "employees" or labor union, except with respect to work performed by or for you or for such "employee", association of "employees" or labor union under direct contract between you as contractor and such "employee", association of "employees" or labor union as owners;

Pennsylvania Lumbermens Mutual Insurance Company
Philadelphia, Pennsylvania

   **(ii)**   Any railroad company except with respect to work performed by you or for you for such railroad company under direct contract or agreement between you and such railroad company;

   **(iii)**   Any person or organization whose profession, business or occupation is that of an architect, surveyor or engineer with respect to liability arising out of preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications; giving directions or instructions; failing to give directions or instructions; or the performance of any other professional services by such person or organization;

   **(iv)**   Any of your contractors or subcontractors or any partner, officer, agent or "employee" of such contractors or subcontractors; and

   **(v)**   Anyone described in Paragraphs **e.(1)** through **(3)** above.

**(b)**   If a vendor of "your products" is an additional insured under this Coverage Form, such insurance as provided to the additional insured applies only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business and subject to the following additional exclusions.

This insurance does not apply to:

   **(i)**   "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of assumption of liability in a contract or agreement. This exclusion does not apply to liability that the vendor would have in the absence of the contract or agreement;

   **(ii)**   Any expressed warranty of your "products" unauthorized by you;

   **(iii)**   Any physical or chemical change in "your products" made intentionally by such vendor;

   **(iv)**   Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instructions from you or the manufacturer, and then such parts are repackaged in the original container;

   **(v)**   Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make, or normally undertakes to make in the normal course of business, in connection with the distribution or sale of "your products";

   **(vi)**   Demonstration, installation, servicing or repair operations except such operations performed at the vendor's premises in connection with the sale of "your products"; or

   **(vii)**   Any of "your products" which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other item or substance by or for the vendor.

This insurance afforded to the vendors in **(4)(b)** above does not apply to any person or organization from whom you have acquired such products, ingredients, parts or containers entering into, accompanying or containing "your products".

No insurance is provided under this vendor's coverage in **(4)(b)** if "bodily injury" or "property damage" under the "products-completed operations hazard" is excluded by any exclusions or provisions of this Coverage Form or by any endorsement.

**(c)**   The insurance afforded to any person or organization as an insured under Paragraph **2.e.(1)** through **(4)** above:

   **(i)**   Shall include only that insurance required to be provided by the terms of such agreement, and then only to the extent that such insurance is included within the terms of this policy, and that person's or organization's status as an additional insured under this endorsement ends: (a) when your operations for that additional insured are completed or (b) when any written contract or agreement with such person or organization is terminated or expires.

    **(ii)**    Does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard" unless such coverage is required by an "insured contract" between you and the additional insured.

    **(iii)**    Is subject to all applicable exclusions of Paragraph **2. Exclusions, Coverage A (Section I)**.

    **(iv)**    Does not include any person or organization included as an insured under the provisions of **Section II – Who Is An Insued** or included as an additional insured by any other endorsement to this policy.

**(d)**    The limits of insurance afforded to such additional insureds shall be the lesser of the limits required by any contract or agreement between the parties or provided by this policy.

**(e)**    The insurance afforded to any person or organization as an additional insured under this Paragraph **2.e.(1)** through **(4)** does not apply to "bodily injury" or "property damage" which occurs prior to the date of your contract or written agreement with such person or organization.

**2.**  **Other Insurance**

The insurance afforded to any additional insured under Paragraph **2.e.(1)** through **(4)** will be primary and non-contributory if required by such contract or agreement with you.

**3.**  **Waiver of Right of Recovery by Written Contract or Agreement**

We waive any right of recovery to payments we make for injury or damages arising out of your ongoing operations or "your work" included in the "products-completed operations hazard". This applies to any person or organization with whom you have agreed in a written contract or agreement made prior to the date of the "occurrence" to waive your rights of recovery from such person or organization, but only for payments made under this insurance as a consequence of such contract or agreement.

**MPT** *Mahaffey Pickens Tucker, LLP*
*ATTORNEYS AT LAW*

Matthew P. Benson
Gerald Davidson, Jr.*
Brian T. Easley
Kelly O. Faber
Christopher D. Holbrook
Frances H. Kim
Shane M. Lanham

Austen T. Mabe
Jeffrey R. Mahaffey
David G. McGee
Steven A. Pickens
Andrew D. Stancil
R. Lee Tucker, Jr.
*Of Counsel

Writer's E-mail: spickens@mptlawfirm.com

February 27, 2017

***CERTIFIED MAIL,***
***RETURN RECEIPT REQUESTED***
***ARTICLE NO.: 7015 3010 0002 0631 6805***

Jeffrey P. Raasch, Esq.
Vernis & Bowling of Atlanta, LLC
30 Perimeter Park Drive
Suite 200
Atlanta, Georgia  30341

Re:     *Blackwell vs. Fizz City Property, et al*
          Gwinnett County State Court
          Civil Action File No.:  16-C-01755-4

**CONFIDENTIAL & PRIVILEDGED SETTLEMENT COMMUNICATION**

Dear Jeff:

Enclosed with this letter please find an Offer of Settlement my clients are making to Classic Millwork Designs, Inc.  It is the purpose of this letter to not only serve as a cover letter for the enclosed Offer of Settlement but to also trigger the provisions of O.C.G.A. § 51-12-14. Accordingly, my clients hereby offer to settle all of their claims against Classic Millwork Designs, Inc. for the available policy limits of $1,000,000.00.  The terms of the settlement my clients are offering are fully set forth in the enclosed Offer of Settlement.  As set forth in the Offer of Settlement, this offer to settle for the available policy limits shall only remain open for a period of thirty (30) days unless sooner rejected or withdrawn in writing. Once this offer expires or is rejected, it will not be extended again.  This will be your only opportunity to protect your insured by settling the case within the available policy limits.



EXHIBIT
C

Jeffrey P. Raasch, Esq.
February 27, 2017
Page 2

Because this offer is being made pursuant to Georgia's Unliquidated Damages Interest Act (O.C.G.A. § 51-12-14), you are hereby notified that we do intend to enforce our clients' right to collect pre-judgment interest at the rate set forth in said statute, should we ultimately obtain a judgment against your client in excess of $1,000,000.00.

I do apologize for the formality of sending this letter and the enclosed Offer of Settlement by certified mail. However, as you know, delivery by certified mail is required by both O.C.G.A. §§ 51-12-14 and 9-11-68. If you have any questions, please call me at your convenience.

Sincerely,

MAHAFFEY PICKENS TUCKER, LLP

Steven A. Pickens

SAP/dlb

Enclosure

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| PATRICIA BLACKWELL, Individually | : | |
| and TED C. SEXTON as Administrator of | : | |
| The Estate of Wade F. Blackwell, | : | CIVIL ACTION FILE |
| | : | |
| Plaintiff, | : | NO.: 16-C-01755-4 |
| | : | |
| vs. | : | |
| | : | |
| FIZZ CITY PROPERTY, LLC, | : | |
| TUCKER DOOR & TRIM, LLC, | : | |
| GIBSON CONSTRUCTION COMPANY, | : | |
| and CLASSIC MILLWORK DESIGNS, INC., | : | |
| | : | |
| Defendants. | : | |

### PLAINTIFFS' OFFER OF SETTLEMENT
### PURSUANT TO O.C.G.A. § 9-11-68

COME NOW, Patricia Blackwell, Individually, and Ted C. Sexton, as the Administrator of The

Estate of Wade F. Blackwell, Plaintiffs in the above-styled civil action, and pursuant to O.C.G.A. § 9-11-

68 tender this, their Offer of Settlement to Defendant Classic Millwork Designs, Inc., showing as follows:

**1.**     **Party making the proposal**

This written Offer of Settlement (the "Offer") is made by Plaintiffs Patricia Blackwell,

Individually, and Ted. C. Sexton, as Administrator of The Estate of Wade F. Blackwell (hereinafter

"Plaintiffs").

**2.**     **Parties to whom the proposal is being made**

Plaintiffs are making this Offer to Defendant, Classic Millwork Designs, Inc.

**3.**     **The claim or claims the proposal is attempting to resolve**

Plaintiffs are making this Offer in an attempt to resolve any and all claims that the Plaintiffs may

have against Classic Millwork Designs, Inc., its subsidiaries, divisions, affiliates, directors, officers,

agents, employees, shareholders, successors, assigns and attorneys. These claims arise from an incident

wherein Wade Blackwell fell to his death from a third-story window in which Classic Millwork Designs, Inc. had recently installed new window sashes and are detailed more fully in Plaintiffs' Complaint filed in the State Court of Gwinnett County, Georgia, Civil Action File Number 16-C-01755-4 (the "Civil Action").

**4.     Relevant conditions**

This Offer is made subject to the following conditions:

(a) Classic Millwork Designs, Inc. must timely accept this Offer in writing;

(b) Within five (5) business days of acceptance of this Offer by Classic Millwork Designs, Inc., Plaintiffs' counsel will provide a Form W-9, Request for Taxpayer Identification Number and Certification to counsel for Classic Millwork Designs, Inc.;

(c) Within thirty (30) days of counsel for Classic Millwork Designs, Inc. receipt of the documents referenced in Section 4(b) herein, Classic Millwork Designs, Inc. shall cause the settlement amount of One Million Dollars and No Cents ($1,000,000.00) to be paid to Plaintiffs in certified funds, in care of the office of Plaintiffs' counsel;

(d) Within seven (7) days of the receipt of the settlement amount from Classic Millwork Designs, Inc., Plaintiffs will file a Motion to Dismiss Classic Millwork Designs, Inc. with prejudice.  In this regard, Plaintiffs shall move for and obtain an Order from the Court dismissing Classic Millwork Designs, Inc. from the above-styled civil action with prejudice;

(e) Plaintiffs will sign a Release extinguishing all claims against Classic Millwork Designs, Inc.

**5.     Total amount of the proposal**

The total amount of the proposal is One Million Dollars and No Cents ($1,000,000.00).

**6.     State with particularity the amount proposed to settle a claim for punitive damages**

The Offer seeks to resolve any and all claims which are asserted, or could be asserted, arising out of the Civil Action and the above-captioned lawsuit.  No claim for punitive damages has been asserted.

**7.     State whether the proposal includes attorney's fees or other expenses and whether attorney's fees or other expenses are part of the legal claim**

The Offer seeks to resolve any and all claims which are asserted, or could be asserted, arising out of the Civil Action and the above-captioned lawsuit, inclusive of any claim for attorney's fees or other expenses, irrespective of whether attorney's fees or other expenses are part of Plaintiffs' legal claim.

**8.     Length of time the Offer shall remain open**

This Offer shall remain open for thirty (30) days unless sooner rejected by Classic Millwork Designs, Inc. or sooner withdrawn in writing by Plaintiffs prior to acceptance by Classic Millwork Designs, Inc. A counter-offer by Classic Millwork Designs, Inc. shall be deemed a rejection. An offer that is neither withdrawn nor accepted within thirty (30) days shall be deemed rejected.  Evidence of this Offer is not admissible in court except in proceedings to enforce a settlement or to determine reasonable attorney's fees and costs.

**9.     Notice to Classic Millwork Designs, Inc.**

This Offer shall place Classic Millwork Designs, Inc. on notice that in the event this Offer is not accepted pursuant to the terms and conditions described herein, and should Plaintiffs later obtain a final judgment that is greater than 125% of this Offer, Plaintiffs shall be entitled to recover reasonable attorney's fees, expenses, and costs of litigation incurred by Plaintiffs or on behalf of Plaintiffs from the date of the rejection of this Offer of Settlement through the entry of Judgment.

**10.     Delivery of the Offer**

This Offer is being sent via certified mail return receipt requested (article no.: 7015 3010 0002 0631 6805), with a Certificate of Service attached.

[Signature contained on following page]

Respectfully submitted, this _27th_ day of February, 2017.

MAHAFFEY PICKENS TUCKER, LLP

Gerald Davidson, Jr.
Georgia Bar No. 206600
Steven A. Pickens
Georgia Bar No. 577850
David G. McGee
Georgia Bar No. 809036
Attorneys for Plaintiffs

1550 North Brown Road
Suite 125
Lawrenceville, Georgia 30043
(770) 232-0000
(678) 518-6880

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served the within and foregoing document entitled **Plaintiffs'**

**Offer Of Settlement Pursuant To O.C.G.A. § 9-11-68** to counsel of record:

Jeffrey P. Raasch, Esq.
Vernis & Bowling of Atlanta, LLC
30 Perimeter Park Drive
Suite 200
Atlanta, Georgia  30341

Respectfully submitted, this 27th day of February, 2017.

MAHAFFEY PICKENS TUCKER, LLP

Steven A. Pickens
Georgia Bar No. 577850
Attorneys for Plaintiffs

1550 North Brown Road
Suite 125
Lawrenceville, Georgia 30043
(770) 232-0000

# VERNIS & BOWLING
### ATTORNEYS AT LAW · EST. 1970

30 PERIMETER PARK DR. STE. 200, ATLANTA, GA 30341 · TEL: 404-846-2001 · FACSIMILE: 404-846-2002

April 6, 2017

<u>Via Email and U.S. Mail</u>
Steven A Pickens
Mahaffey Pickens Tucker, LLP
1550 North Brown Road, Suite 125
Lawrenceville, GA 30043

Re:  <u>Patricia Blackwell, Individually and Ted C. Sexton as Administrator of the Estate of Wade F. Blackwell v. Fizz City Property, LLC, Tucker Door & Trim, LLC, Gibson Construction Company, and Classic Millwork Designs, Inc.</u>
State Court of Gwinnett County, Georgia
Civil Action No.:      16-C-01755-4
Our File No.:      0449-150153

Dear Steve:

We have received your letter of February 27, 2017, which I believe was actually received by me on Monday, March 6, 2017, which contained an Offer of Settlement as well as a Settlement Demand pursuant to the provisions of O.C.G.A § 51-12-14.  Under both the Offer of Settlement, pursuant to O.C.G.A. § 9-11-68, and the Unliquidated Damages Interest Act, pursuant to O.C.G.A. § 51-12-14, it is my understanding that you have made a demand for the $1,000,000.00 policy limits of my client in the above-mentioned case, Classic Millwork Designs, Inc.

However, at this time we do not see the weight of the evidence being against Classic Millwork Designs in order to offer your clients the policy limits of $1,000,000.00 so we reject the terms of your Offer of Settlement and your client's demand under the Unliquidated Damages Interest Act.

Should you have any questions concerning these matters, please feel free to contact me.

Sincerely,

Vernis & Bowling of Atlanta, LLC

Jeffrey P. Raasch
For the Firm

JPR/tm

DELAND, FL          JACKSONVILLE, FL       PENSACOLA, FL       ATLANTA, GA
FORT MYERS, FL      KEY WEST, FL           ST. PETERSBURG, FL  GULFPORT, MS
HOLLYWOOD, FL       MIAMI, FL              TAMPA, FL           JACKSON, MS
ISLAMORADA, FL      NORTH PALM BEACH, FL   BIRMINGHAM, AL      CHARLOTTE, NC
                                           MOBILE, AL          COLUMBIA, SC

EXHIBIT
D

WWW.NATIONAL-LAW.COM

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA



FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

19 APR 10  PM 2: 15

RICHARD ALEXANDER, CLERK

PATRICIA BLACKWELL, Individually   :
and TED C. SEXTON as Administrator of   :
The Estate of Wade F. Blackwell,   :

      Plaintiff,   :

vs.   :

CLASSIC MILLWORK DESIGNS, INC.   :

      Defendant.   :

CIVIL ACTION FILE

NO.: 16-C-01755-4

## AMENDED FINAL JUDGMENT

The above-styled case came before the Court during the week of November 26, 2018 for a trial by jury, the Honorable Joseph C. Iannazzone, presiding.  The trial concluded with a jury verdict on November 30, 2018.  The issues having been duly tried, and the jury having duly rendered its verdict, the Court entered FINAL JUDGMENT on the jury's verdict on December 5, 2018. The Judgment indicated that any Motion for Attorney's fees filed pursuant to O.C.G.A. §9-11-68 would be addressed by separate order.  Such a motion having been filed and addressed by separate order, it is necessary to amend the Final Judgment, *nunc pro tunc*, to add the attorneys' fees awarded by the court.  Accordingly, this Court hereby enters the following AMENDED FINAL JUDGMENT on the jury's verdict:

1. That JUDGMENT is hereby entered in favor of Plaintiff Patricia Blackwell, Individually, against Defendant Classic Millwork Designs, Inc., in the sum of $12,872,249.00 plus pre- judgment interest in the amount of $115,734.79 (calculated through December 3, 2018).

2. That JUDGMENT is hereby entered in favor of Plaintiff Ted C. Sexton, as

1



EXHIBIT
E

Administrator of The Estate of Wade F. Blackwell, against Defendant Classic Millwork

Designs, Inc., in the sum of $5,013,961.50.

3. That JUDGMENT is hereby entered in favor of Plaintiff Patricia Blackwell,

Individually, against Defendant Classic Millwork Designs, Inc., for attorneys' fees in the

sum of $4,428,053.66 and expenses of litigation in the sum of $70,053.03.

4. That JUDGMENT is hereby entered in favor of Plaintiff Ted C. Sexton, as

Administrator of The Estate of Wade F. Blackwell, against Defendant Classic Millwork

Designs, Inc., for attorneys' fees in the sum of $1,724,802.76 and expenses of litigation

in the sum of $24,325.71.

All sums awarded in this JUDGMENT (other than pre-judgment interest) shall accrue post-judgment interest as provided by O.C.G.A. § 7-4-12 at the legal rate of 8.25%[1] commencing on December 5, 2018, the day Final Judgment was entered in this matter.

IT IS SO ORDERED, this  *9*  day of April, 2019, *nunc pro tunc* December 5, 2018.

Honorable Joseph C. Iannazzone
Senor Judge, State Court of Gwinnett County
By Designation

---

[1] "All judgments in this state shall bear annual interest upon the principal amount recovered at a rate equal to the prime rate as published by the Board of Governors of the Federal Reserve System, as published in statistical release H. 15 or any publication that may supersede it, on the day the judgment is entered plus 3 percent." O.C.G.A. § 7-4-12(a). The Federal Reserve Board prime bank loan in effect on December 3, 2018 was 5.25% per annum according to the Board of Governors of the Federal Reserve System statistical release H. 15 for the week including December 3, 2018. (https://www.federalreserve.gov/datadownload/Preview.aspx?pi=400&rel= H15&preview=H15/H15/RIFSPBLP_N.WW; http://www.fedprimerate.com/wall_street_ journal_prime_rate_history.htm).